v. Visa, et al. Before the court today are two summary judgment rulings between Chase and Landry's and a 12B6 dismissal in favor of Visa MasterCard. That last ruling is quite straightforward and can be left to the briefs. The first two rulings are where I'd like to spend our time today, and there's a logical order to discussing these. The first issue is disposes of the entire case because Landry's conclusively proved that it has no obligation to indemnify Chase for assessments that are unenforceable penalties. This court could end the analysis for the entire appeal by holding that a contract cannot liquidate damages where the non-breaching party has no loss and no obligation to pay money to third parties. What's your best authority for that proposition there? And I assume we're talking about both New York and California law? Yes, Your Honor. So that issue is a question of New York and California law because that's the law governing the contracts between Visa MasterCard and Chase, the acquirer bank. And under both states' laws, it is undisputed that the public policy of those states does not allow unenforceable penalties. So you're looking... Well, no, that's certainly true, but I mean with respect to the third-party principle. That's right. That's right. So you're looking at what is a valid liquidated damage, and it's very basic principles about how it has to reasonably estimate the loss to the non-breaching party. So here, the non-breaching party to these contracts are Visa and MasterCard. It is undisputed that Visa and MasterCard have no losses themselves. What they're doing is they're collecting money from their acquirer bank, in this case that's Chase, and then they'll use that money to pay at their discretion the issuer banks. The issuer banks are the ones that have the relationship with the cardholders and allegedly suffer losses. So Visa and MasterCard take money from the acquirer banks and then pay it to the issuer banks. The reason that this is unenforceable as a penalty is because Visa and MasterCard have no obligation, contractual or otherwise, to pay that money to the issuer bank. What can you point to in the record that shows that they have no obligation to pay any of that money to the issuing bank? Pages 241 and 271 are the sites that I've noticed from my outline, but we've put quite a few sites in the briefs as well. There are additional record sites in the briefs. When I look at those record sites, how is it going to eliminate that they have no obligation to pay? Well, it is undisputed. I can bring back particular quotes from the record if the court would like, but I don't You're saying it's undisputed. That's right. And I think if you ask Visa and MasterCard to concede, they will not concede this point. And even if they did, you'd ask them for the record site where they have contractually obligated themselves to pay the issuer banks. They can't provide one. I may well do that. Okay, good. Well, let me say, remember for just a moment that this first issue is just a summary judgment issue between Landry's and Chase. So the record for purposes of this issue really is the Chase record, right? This is not a Visa MasterCard record. Counsel, you haven't mentioned the Sally Beauty case. How would you distinguish that? Well, that is Chase's response is they say, oh, look, it's Sally Beauty. And so we do not quarrel with the legal analysis in Sally Beauty. We think the Texas Fort Worth Court of Appeals states the law correctly and what the proposition that they're relying on is to say, well, if the non-breaching party has a liability to a third party, that can satisfy the requirement that they themselves have suffered losses because they have a liability. The face of the Sally Beauty opinion shows that the court made a factual error. It's at page 10 of Sally Beauty where the court says, and I'm going to quote, that the Visa core rules demonstrate that Visa would be contractually obligated to reimburse a third party's expenses based on the GCAR formula. That's not true. And we know, at least in this record, we can affirmatively prove that's not true. Visa is not contractually obligated to pay issuer banks. They do this at their discretion if they want to, but they don't have to. So it is not a liability to a third party when they have complete discretion over whether they pay that money or not. So this is an unusual scheme. This is very foreign to American contract law. Typically when you're talking about liquidated damages and unenforceable penalties, the parties are talking about the amount, and they're saying, oh, look, the amount doesn't reasonably estimate the loss to the other party. Are there any instances, and I hate to ask you for information that might not be in the record, but are there any instances where Visa or MasterCard has declined to make the payment? I'm sorry, not Visa or MasterCard, but an entity like Chase, an issuer declined to make the payment? You're saying that it's a payment that they're not liable for, and therefore it's not subject to being indemnified. Well, it's not in this record, but I can also tell you that they make it very, very clear in their rules that they don't have to make the payment. They could even claw back the payment if they decide that that's appropriate. So it is truly Visa and MasterCard get to sit there and decide what do they think makes sense as a practical matter, maybe as an efficient matter, but it's not contractually valid. So they send out an assessment, and an entity such as Chase, J.P. Morgan, decides whether or not they wish to pay the assessment. I know there's a mechanism, and it's maybe later in your argument, where they can contest the calculation, and I think in this case, there's some evidence that it was reduced. There's something in the record about it having been reduced. But your argument is that they can just flat out say, well, no, we're not paying that. We don't think we owe it, period. The Chase bank, yes, they could. Now Chase is contractually obligated with Visa and MasterCard to participate in this assessment scheme, but if Chase had wanted to, it could have gone to court and said, this is an unenforceable penalty. Chase didn't do that because it is part of this whole scheme. It's okay with how this works. We Landry's, the merchant, are not part of the scheme, and we're saying this is not a contractually valid way of handling assessments. I thought, I mean, to pick up on what Judge Engelhardt said, I thought it was Chase that asked for an appeal of the assessment through the appeal process. Visa did not budge on the amount, and MasterCard did. Is that right? Yes. Okay. Now, when Chase did that, can you tell me whether Chase made this argument about unenforceability of the liquidated damages? My knowledge, no, and I don't think that's on the record, but think about it for just a minute. Chase is not incentivized to make this argument to Visa and MasterCard. Maybe they'll go through their appeal process and say, oh, you should reduce the amount, but Chase should have gone to court and said, look, under California and New York law, you can't charge a liquidated damage when you have no losses, and you don't have to pay this money to a third party, you, Visa, MasterCard. We brought that. Why would they do that? I mean, wouldn't that blow up the entire basis of their contract with Visa? Right. That's exactly right. They wouldn't. They don't have any incentive to do that. They entered into the, okay, right, they have no incentive to do that. I think you understand. Yes, I think I do. They are participating in something that works if nobody objects, but we landries have objected, and we've said, you can agree amongst yourselves to do this, but you don't get to turn around and ask for indemnity from us when this was not an enforceable liability. Now, what does your contract with Chase say with respect to indemnity? That's issue two, and I'm happy to. Okay. Well, I mean, I want you to get your thoughts out on this issue. Well, I think the court understands the lead argument, which is, just very briefly, it's that these liabilities as between Chase and Visa and MasterCard are not enforceable under California and New York law. Chase decided not to go challenge that for its own reasons, but our position as the merchant facing indemnity liability is that Chase does not get to then turn around and impose its unenforceable liability on us as an indemnitor. We move for summary judgment on that. Chase had one paragraph of response, no evidence. They did not actually refute this argument in the district court, and on appeal, their best answer is Sally Beauty, and Sally Beauty is factually wrong. This court is not bound by an intermediate decision, and especially when it's wrong on the face of the appeal. Okay. I think we get that. Okay. So turning to issue two. So issue two. This is where we, Chase, are challenging the $20 million judgment against us. So Chase has moved for summary judgment, saying it conclusively established its entitlement to indemnity, but first of all, it's not even reading its contract correctly. So it's indemnity provisions. It's got two different sections that both require it to prove the factual predicate that Landry's violated the payment brand rules. Where does the, what's your best language in one of those, one or both of those indemnity clauses that show that it must prove? Section 12 says that it requires the predicate findings of a failure to comply with the payment brand rules, including the security guidelines, or the compromise of any payment instrument information that results in assessments. And then section 11.2, it indemnifies for losses, liabilities, damages that are caused by your noncompliance with the payment brand rules. Now what Chase has done in its briefing, and I've counted about 10 times where it's saying that we're liable for indemnity if the payment brands determine that they should impose assessments. That's not what the contracts say. It is not as simple as coming to court saying, for Chase, saying we've incurred assessments. They have to show under their indemnity provisions with Landry's that Landry's violated the payment brand rules. Are you arguing that any part of your contract with Chase is ambiguous and should be construed in your favor, or do you believe that it's entirely clear, when you argued the summary judgment, that it's entirely clear that you don't have to indemnify? It's entirely clear. There's nobody alleging ambiguity. And remember, this is Chase's motion against Landry's, where they have the burden to prove the predicate facts for indemnification. Every indemnity case requires the indemnity to prove things like a property loss or a personal injury or, you know, occurrence during the policy period. You always have to prove the predicate facts to get indemnity. We'll hear what they say to this, but I have a feeling that they're going to say the predicate for the indemnification is an assessment. That's what their position is. Okay. So what is your response to that? Since I see that, you agree to indemnify immediately for any such assessments, fines or penalties. The assessments have been levied. So why doesn't that trigger the indemnification? Before that, Judge Duncan, it says that we agree to indemnify for the failure to comply with the payment brand rules, including the security guidelines, or the compromise of any payment instrument information. So those are the two factual predicates. Either one of those, if they prove them in court conclusively, then they get summary judgment. So they didn't even try to prove these. And let's back up. In the district court, I think they acknowledged they needed to prove this, but they offered the Mandiant Report, which they are distancing themselves from on appeal because we have argued, correctly, that this is hearsay. It should have been stricken. They have one report that they never put in admissible form. But you oppose that also with the IBM report, is that correct? That's right. And that's the only relevance to IBM is to counteract the report, the clause, the language that you just cited in response to Judge Duncan's question. That's right. So remember, Chase has the burden to conclusively establish these predicate facts. Its sole piece of evidence is the hearsay Mandiant Report that Judge Hughes should have stricken as inadmissible, but it's part of the record. But we went ahead and countered the Mandiant Report with the IBM report and with the Sherry Carr declaration. So we have an expert who explains the Mandiant Report. This is in tab I of the record excerpts. Can you explain to me just briefly, what do you think the nature of the fact dispute regarding whether there was a failure to comply with the rules? What is the nature of that dispute? Well, Landry's denies that there was any failure to comply. Okay, I get that. But the reason I ask is because it seems undisputable that there was a breach, there was a data breach. It's undisputable that there was an intrusion. So let me... Okay. This is technical. So technical language. Okay. Something bad happened with respect to credit card data. I'll give you the technical language, but I think it's really important, too, to remember in this summary judgment posture, you can't just take their assertions that there was this breach or compromise or use words loosely. We have to be technical here because this is pretty technical. The Mandiant... First of all, the security guidelines apply only to the card data environment where the customer's payment information is stored. Mandiant concluded that the intrusion happened in the corporate environment. That's a different side of the house. They did not conclude that there was any intrusion in the card data environment. So their conclusions, even accepted as true, don't actually conclude that there was a security guidelines violation, which is the predicate fact that Chase has to establish. Now Chase has speculated in its brief that the intrusion went through the network over to the card data environment, and we've shown in the Sherry Card Declaration that Mandiant did not conclude that there were any segmentation issues between these two environments that contributed to an attacker gaining access to the card data environment. So we have created and shown fact issues about whether there was actually any intrusion that constitutes a violation of the security guidelines, and Chase is just relying on this hearsay report. They haven't actually met their burden to show any admissible evidence, much less conclusively so. And this is the kind of case where the merchant gets to go to court and say, we didn't actually violate these security guidelines, and in fact, IBM, who did not— You take the position that's under this arrangement that you, that Mandiant had no exposure so long as under their, they abided their contractual obligations to take those steps that are necessary to, and Visa and others, to prevent a breach. And so that if they're in full compliance with those contractual terms and there is a breach, where are we? So to answer your question, there would be no indemnity obligation if we're in full compliance with the security guidelines, and then that leaves Chase with having to prove compromise. Different issue, and we can get to that. But I think your question highlights something very important, if I may just briefly— But it goes to causation, hopefully. The question of a causal relationship between the failure of Landry, if any—I'm trying to be clear in my mind about how this operates. It's a very unusual contractual relationship to me. But Landry is an ongoing business, wants to get the credit card business, of course, and by necessity. And so they also don't want the exposure of a breach either. And so under the agreement, they are to abide by certain protocols to prevent such a breach. And is it the case that if they abide those protocols and there's nonetheless a breach that you can be assessed or not? Can they assess you regardless? This is a very important point. I think what you're asking about is the standards for the assessments, which remember, those standards are between Visa MasterCard and Chase, which are different from the contractual indemnity obligation. I understand. So that's a really key point to keep in mind, is that whatever standards Visa MasterCard decide apply to, whether they assess or not, is separate and distinct from are we liable to Chase for indemnity? Well, this goes back to the—how do you pronounce—Mandiant report, whatever you have to pronounce it. Mandiant. Mandiant report itself. And the question that a colleague asked about doctor disputes, et cetera, there's some that the obligation—your obligation was not limited by that—by conformity to those standards, that you agreed to—to the—you exposed yourself to liability regardless. And that—but I take it that's not in this record. The issue wasn't making that connection. I'm going back to the narrow point that I'm trying to understand this, the contractual relationship, where landuries or businesses of the user enter into these arrangements. They are, among other things, agreed to abide by certain protocols. We know that. And the question is, is conformity to those guidelines sufficient to avoid liability? If so, then it seems to me the Mandiant report raises serious questions of fact. Yes. That's true. And I think your question really does highlight this important point that Chase—excuse me, that landuries may have defenses to indemnity that are different from Chase's defenses to the assessment, because those are different standards. I understand. So, you're right. There are issues of fact about whether we actually violated anything that obliges us to indemnify Chase. Thank you, counsel. Thank you. We'll have time for rebuttal. Mr. Sammons, Sammons, for Payment Tech. Good morning. Good morning. Thank you, Your Honor. I'm David Sammons on behalf of JPMorgan Chase and Payment Tech. I will focus on Landry's indemnification obligation, and then counsel for MasterCard and Visa will then address Landry's claims against the payment brands. The district court rightly concluded that Section 12 of the merchant agreement between Chase and Landry's required Landry's to immediately indemnify and reimburse Chase as soon as the payment brands imposed the GCAR and ADC assessments on Chase. In the first clause of Section 12's indemnity provision, Landry's acknowledges that the rules and guidelines expressly incorporated into the agreement provide two grounds that are under Landry's control that could lead the payment brands to impose assessment fines or penalties on Chase. Specifically, either Landry's failure to comply with payment brand rules or a compromise of any payment instrument information. So Landry's is very clear what their argument is. They're saying, look, there's a fact issue on whether we failed to comply with the security guidelines. Summary judgment, inappropriate. What's your basic response to that? The best response to that is the next part of the indemnity provision, Your Honor, which says Landry's promises to indemnify and reimburse Chase immediately for any such assessment fine or penalty. Well, any such assessment. Assessment that is predicated on a failure to comply. Yes, Your Honor. And so, again, keep in mind this agreement expressly incorporates the security guidelines and payment brand rules. And this is an implementation of that in Section 12. The only assessments that are at issue in Section 12 of the agreement are the GCAR and ADC assessments, which are only permitted under the rules for either a violation of the rules or a compromise. So your view is that there is no safe harbor for Landry's. You insist that they take certain fines, certain protocols, et cetera, which in the judgment ignore people who are techies to prevent breaches. But that's not a safe harbor. It doesn't matter whether they provided for them or not. If, in fact, a breach occurred, they're liable. That is absolutely clear from the agreement and from the GCAR and ADC. But that all turns on that phrase that you just read, which is not a phrase, but out of the contract. The way one reads that. The term compromise. Is that the term you're meaning? No. I mean, what you just read about. I'm trying to get what their obligation is. Under the indemnity agreement. Yes. I understand now. Section 12. Correct. So what Section 12 says is that, in the first part, you understand that under these rules there are these two grounds by which the payment brands may impose an assessment on Chase because of things that you have control over, whether you complied with the rules or whether a data breach occurred at your facility. Landry's controls the facts with regard to those two things. And if, it says, if an assessment is imposed, you promise to immediately indemnify and reimburse. If an assessment... Where is it defined, in any, either of the contracts, where is it defined who makes the dispositive decision that a breach, or whatever terminology we want to use, a nonconformity has occurred. It's a dispositive decision and we've got a merchant such as Landry's. Yes. The second part of my question is, when do they get to say, you got it wrong. In fact, we're in compliance. Yes, you are. Thank you. So this is, I think, a really important point. So, and both sides are in agreement on this. They rely very heavily on other parts of their argument upon the fact that the rules are very clear that the payment brands themselves have the authority and discretion to determine when a compromise event occurs or there's been a violation of the rule and to determine under the guidelines how much of an assessment is going to be warranted. You can find that at Record on Appeal 1413 for the visa rules. That's section 10.11.1.1 that says, among other things, quote, a visa has authority and discretion to determine account data compromise event qualification and acquire or liability under the GCAR program and in accordance with the GCAR guide and available information. And then under the MasterCard rules, this is Record on Appeal 1852.10.2.1 of the MasterCard rules that states MasterCard's determinations with respect to the occurrence of and responsibility for account data compromise events are conclusive and that MasterCard has the authority to impose assessments, recover costs, and administer compensation if appropriate. So it is abundantly clear under the rules that bind all of us, including Landry's, which expressly, the agreement here expressly incorporates those rules, that the entity that's going to decide when a violation occurs and when a compromise event has occurred are the payment brands. And with that... It sounds like you're arguing, though, that by entering into the contract, Landry's waives the right to contest such an assessment in the future. I'm saying with regard to their obligation under the contract to indemnify and immediately reimburse Chase, that is absolutely correct. That promise is to immediately reimburse for any assessment that's made. It doesn't say if you can prove in court that the underlying factual or legal grounds for the assessment are correct. That's either implicit in this or the rest of the agreement is just surpluses about the safe harbor. That summary statement is made against the backdrop that you have assured the merchants that these are the things our high-tech people say you must abide. And you undertook, as I read this record, to see whether or not you had abided to those. And this report, mandatory report, was generated to find out what happened. Well, that's right. And it didn't really matter what happened under your views of the contract. Well, under our views in terms of their indemnity obligation, it doesn't matter whether they or a court later determines that the payment brands were correct as a matter of fact in terms of there being a violation or there being a compromise. Although I'll get in a moment why it's clear that there is. I appreciate your candor. It just doesn't matter. But was not Chase allowed to appeal this assessment up through some kind of internal? Well, Chase was and it did. On what grounds does Chase? Yes, Your Honor. Thank you. I want to be very clear about this. So if you look at 3222 of the record on appeal, you'll see just let's take Visa for a moment. This is the final resolution and assessment by Visa that addresses all of the grounds that were raised in the appeal that Chase filed on behalf of Landry's. All of the arguments you hear today are reflected in this and they are walked through and responded to. Is it the same thing about corporate environment versus? All of that was made, correct. And they're wrong, by the way, Your Honor. There's really not a factual dispute in this case with regard to either whether there was a violation of the rules or whether there was a compromise event. There's an awful lot trying to gin up the appearance of a factual dispute. But the principal argument, as you heard today, is that these rules don't apply to the business side, only to the cardholder environment. And I would just point the court to record on appeal 2308. These are the payment card industry data security standards and it expressly addresses the issue of two-factor authentication. And it says the requirement is intended to apply to users that have remote access to the network where that remote access could lead to access to the cardholder data environment. If remote access to an entity's network that has appropriate segmentation such that remote users cannot access or impact the cardholder data environment, two-factor authentication for remote access to that network would not be required. However, two-factor authentication is required for any remote access to networks with access to cardholder data information. I mean, look, we can certainly review the record. Right. I think there's a big difference between saying we're reviewing the record to see if there's a genuine dispute of material fact as to whether there was a failure to comply or I think what your primary position is is that we don't do that. Absolutely right. Okay, that's your primary. Yes, absolutely. The only condition that's required for their duty to immediately indemnify and reimburse is the imposition of these GCAR and ADC rules. They knew the rules at the time. They knew what they were required. They knew who would be making the determinations. And so when they promised to immediately reimburse Chase, Landry's did so with full knowledge of and having agreed to be bound by these rules and they knew that, you know, whatever the outcome of that assessment might be, it would be in the discretion of the payment brands and they would reimburse us. And that promise is clear. I'm sorry. I'm sorry. Please. If we agree with your opponent that Sally Beauty is either factually deficient or inapplicable, do you have any cases that we should look at that are not Sally Beauty? Well, Your Honor, so two responses to that. One, our lead argument is that you don't get into that here because of the way the indemnity provision is worded, at least as to the indemnity issue. I would just note again that it doesn't say, you know, Landry's doesn't promise to reimburse if the assessment is an appropriate liquidated damages amount. And Texas law is abundantly clear. We cite the English case that an indemnity obligation is not, you can't evade it because of some claimed deficiency or illegality in the underlying contract that gives rise to it. Unless you can show bad faith or fraud or something like that, you have to keep your promise to indemnify. And there's no exception in that indemnity promise if the, in fact, it expressly says assessment, fine, or penalty. So there's no condition that it has to be liquidated damages and not a penalty for them to indemnify. But with regard to the law of liquidated damages, we agree with the arguments that the payment brands have made and we think you look to California and New York law because that's the law of the governing contract with the payment brands and we think it's clear that they are proper liquidated damages. And the payment brands are going to take up that argument as well. Yes, that's right, Your Honor. And just the last point I would make very quickly is that we do think the district court was required to award prejudgment interest to Chase. There's no real dispute that Chase is entitled to prejudgment interest and there's no reason to remand to the district court for it to do it. This court can and should reform the judgment to include it. We cited the Farmland Industries case where this court has done so and we'd ask the court to do so here. Well, we can read your brief on that. Thank you, Counsel. Let's see. Now we'll hear from MasterCard from Mr. Hyman. Please. Good morning and may it please the court. Ms. Pfeiffer rested on her briefs and this case concerns the card brands. I'm prepared to do that as well, but there are some points that I think need to be made. You have time. I'd like to try to make them briefly. First of all, MasterCard collected the assessment only from Chase and distributed the funds to the affected issuing banks to cover some of their estimated losses in connection with a data breach at Landry's. At that point, the MasterCard process was complete. MasterCard never took or sought to take a penny from Landry's. MasterCard was not unjustly enriched by virtue of the assessment. It was not enriched at all. Right. I remember asking Ms. Pfeiffer whether MasterCard or Visa has an obligation after making the assessments to distribute the funds to the issuer. The answer is yes. Okay. Now, how can I know that, I guess? Because her argument is obviously it's purely discretionary. No. The distribution of the assessment is provided for in the rules and that's part of the agreement between MasterCard and its banks. So I look to the, I forget what the MasterCard rules are called. The MasterCard rules. The MasterCard rules. The standards. So I can find it in the MasterCard rules. Yes, you can. And the point here is that MasterCard has discretion once a preliminary assessment is made to reduce the assessment to some extent based on criteria set forth in their rules. And they did that here because MasterCard responded to an appeal, an internal appeal by Chase and determined that the assessment should be reduced and that was acceptable to Chase. Does the record reflect the basis on which MasterCard decided to reduce the assessment? Yes. Absolutely. Now, Landry's wants to challenge an assessment methodology that was agreed to by MasterCard and its thousands of customer banks that's been in place for decades and that protects cardholders from fraud and fraudulent charges arising from data breaches. Landry's admittedly is not a party to nor is it a third-party beneficiary of the MasterCard license agreement and has no legal basis to contest the validity or enforceability of that contract. Now, important point. Denying standing to Landry's in this context does not and would not leave Landry's without recourse. Landry's was free to litigate the scope of its reimbursement liability under the merchant agreement with Chase which is precisely what Landry's is doing here. And if there were any bona fide issue with regard to the propriety of the assessment, the amount of the assessment, Chase would have standing to raise that issue and in fact, as the court will note, Chase did challenge the assessment and it resulted in a reduction. Now, if Landry's agreed to a broad indemnification with Chase, it should be bound by that based on the language of the merchant agreement which MasterCard was not a party to. MasterCard is a stranger to that, had nothing to do with it whatsoever and it was of no moment to MasterCard what went on between Chase and Landry's. On the other hand, if Landry's believes that the indemnity is limited in some way, it can argue that point in contesting its liability to Chase and it's done that. But simply because Landry's may not like the outcome of that dispute concerning the scope of it under either circumstance, whether it's overly broad or it's limited to some extent, that doesn't create standing in Landry's to sue MasterCard or Visa for that matter. I understand. You've briefed that and you're out of time so we appreciate your argument. Thank you, Counsel. And then finally, for Visa, Ms. Kiernan. Good morning. Good morning, Your Honors. And may it please the Court. This Court should affirm the judgment below because Landry's can't avoid its contractual obligations to Chase by collaterally attacking Chase's separate contract with Visa. And I'll just make three quick points, Your Honors, but of course I welcome any questions. First and importantly, Landry's, Chase, and Visa are all sophisticated parties that contracted for valuable rights and determined who should bear the risks for protecting sensitive consumer data. Landry's could have contracted with Chase for the right to be its subrogate. It could have contracted to limit its liability. Or it could have contracted not to pay any assessment at all. But it didn't. And its dissatisfaction with what it did contract for isn't a reason to create those rights now. Second, Chase's obligations to Visa were triggered only because Landry's failed to follow basic industry standards. And that failure exposed consumer data to an 18-month-long hack. Can I ask you the same question I asked Mr. Hyman? Ms. Pfeiffer is saying that the obligation of the payment brands to distribute the assessments to, say, the issuing bank is wholly discretionary. Do you agree or disagree with that? And what can you point to in the record that would help us resolve that issue? Yes, Your Honor. The GCAR program is very clear about how reimbursements to issuers occur. Starting on page 3015 of the record on appeal, going through page 3016, Visa provides issuers notification of the settlement they're going to receive. It explains exactly how the settlement will be reimbursed. And it even provides a timeline for that reimbursement. So I think you're echoing what Mr. Hyman said, is that it's in the rules. You look to the rules. Those are incorporated into the contracts. Yes, Your Honor. So that obligates the payment brands. The rules provide for... The entire program is designed to compensate the issuers. Where is the discretion built in on behalf of the payment brands? It's built in at the front end before the assessment is levied, Your Honor. Visa is not required to assess the acquirer for a breach. It has the discretion to review whether or not it qualifies for the program and in instances where it could really detrimentally harm an acquirer to levy the assessment. That's the catastrophic waiver, for instance. It can take that into account as it's determining whether or not to levy the assessment. Okay. So your position is the discretion is whether to levy the assessments in the first place. But once they're assessed, your view is that the GCAR rules require the payment brands to distribute the money. This program is designed to compensate the issuers. That's the whole point. Okay. Thank you. And with that, Your Honors, the Court can and should affirm the dismissal of Visa for the sole reason that Landry's failure to follow industry standards means it can't cast itself as Chase's equitable subrogate. And if the Court has no further questions, we'll also just rest on our brace and see the remainder of our time. Thank you, Counsel. Thank you, Your Honors. Time for rebuttal. May it please the Court. Starting with Chase, I think they've made their position about the contract interpretation quite clear. Their whole position hangs on the word immediately. And they read that word as writing out the factual predicates that are in the contract to say that our indemnity obligation hangs on proof of a violation of the payment brand rules or compromise. They say that it doesn't matter if Visa and MasterCard are completely wrong that Landry's would not get to stand up in court and challenge its indemnity obligation. That's just wrong. That's no way to read a contract. It violates basic contract interpretation principles. But even more importantly, it violates the rule that indemnity contracts are strictly construed in favor of the indemnitore. We get to stand on the factual predicates that have to be proven before we have any indemnity obligation. We do get to come to court and challenge that either of those have been satisfied. One other thing I'll just point out to the Court to be very careful of with this record, we have three records here. We have a summary judgment record where Landry's moved for summary judgment. We have a summary judgment record where Chase moved for summary judgment. And then we have this dismissal record. These are all different records, different rulings at different times, and it's very important not to conflate the different parts of the record. But I do want to address, Judge Duncan, your questions of Visa and MasterCard because we just disagree about what their record says about their obligations to these issuer banks. At 3016, Visa says that in its rules, under no circumstances is Visa responsible to fund any recovery amounts. At 3002, this is in the sealed record, Visa says it retains the right to eliminate an issuer's possible recovery. At 3010, if Visa concludes it is unable or not in the best interest of the Visa system as a whole to assess or collect an assessment under GCAR for any reason, issuers shall have no right to any GCAR recovery amounts. And MasterCard's rules are consistent with that. At 271, 251, they clearly state in their rules that they retain 271 and 251 of the record, as MasterCard cites. They clearly state in their rules that they have complete discretion over whether to impose assessments, what the amounts should be, the appellate process, and whether to pay the issuer banks. They are not contractually obligated to pay issuer banks. That's the key problem with Sally Beauty. And Judge Inglehart, I'm glad you asked if there were any other cases to support Chase's position. Chase has nothing other than Sally Beauty, and that case is just factually wrong. And so Chase has not met its burden as the summary judgment non-movement, the respondent, to actually challenge or actually defend this whole scheme as valid liquidated damages. That's why the case should be reversed and rendered. But even more clearly, it has failed to raise any conclusive evidence that the factual predicates for the indemnity obligation were in fact satisfied. And the court on this contract cannot just ignore the evidence that Landry's introduced, the IBM report, the Sherry Carr Declaration, showing that we do challenge whether we violated these security guidelines. We challenge whether there was in fact a compromise, as that word is defined in the indemnity agreement, that there was actually something where hackers were able to remove information and compromise the data. And so we are just standing on our rights to go prove those facts in court. If the court has no further questions, I'll cede back my time. Thank you. Thank you for a well-argued case on both sides.